COLE *v.* CITY OF LA GRANGE.[1]

SANFORD *v.* SAME.[1]

*(Circuit Court, E. D. Missouri. March 22, 1884.)*

CONSTITUTIONAL LAW—TAXATION IN AID OF PRIVATE ENTERPRISES.
  State legislatures have no authority to authorize taxation in aid of private enterprises or objects, even where there is no express constitutional prohibition.

Demurrers to the Answers.

These are suits upon interest coupons cut from bonds issued as a gift from the city of La Grange, Missouri, to the La Grange Iron & Steel Company, a private corporation, under an act of the legislature of Missouri. The answers set up as defenses, (1) general denials; and (2) that the issue of the bonds was *ultra vires,* and contrary to law.

*Sanders & Haynes,* for plaintiffs.
*David Wagner,* for defendant.

TREAT, J. These cases rest on the same facts and propositions of law. The purpose is to have the judgment of the court on the special defense set up; yet the demurrer is general, and each answer contains a general denial. That technical point seems to have been overlooked; but as the parties have presented the subject on special defenses, by mutual understanding, the court announces its views with respect thereto. It is not deemed necessary to travel over the ground, theoretical and elemental, on which the many cases cited rest; for the books and adjudged cases are full of the law-learning involved.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

The main proposition always is as to the authority of a county or town or city to incur the obligations sued on, whether evidenced by a bond or otherwise. In these cases the suits are on coupons detached from bonds issued by the defendant, pursuant to the required vote of the citizens, as a gift to a private manufacturing corporation. There was a legislative enactment, to-wit, the charter of the defendant, which in terms permitted the issue of the bonds, the proper vote etc., having been duly had. The state constitution contains this clause:

"The general assembly shall not authorize any city, county, or town to become the stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held thereon, shall assent thereto."

It is contended that as there is no specific prohibition in the constitution against the issue by a city of its bonds as a gift to a private enterprise, if a two-thirds majority of the citizens so vote, the bonds might be held valid in the hands of *bona fide* holders, and the property within the corporate limits remain subject to taxation to meet such alleged obligations. It is true the state constitution in express terms refers only to becoming a stockholder or loaning credit, and says nothing about *gifts*. Why not? Because it was considered by all familiar with the elemental principles of free governments that they were not founded and did not exist for the confiscation of private rights, or, through the exercise of the taxing power, appropriate one man's property for the private benefit of another.

The court, at the close of the argument, asked if it was contended that inasmuch as the constitution required a two-thirds vote only as to becoming a stockholder or loaning municipal credit, therefore, a city could, without vote, give away its corporate funds or revenues, or impose a tax to make good a promised gift. Inasmuch as it is beyond the legitimate sphere of municipalities to use their taxing or other functions for mere private interests; and inasmuch as it had been settled that they could, as stockholders or otherwise, aid public enterprises, there was need of restricting the latter by exacting a vote of the people, but no need of providing against the former. It is not a "*casus omissus*," nor an intentional license for indiscriminate squandering of revenues by way of donations. When the required vote is had for stock or loans it is supposed the city receives value or security therefor, and the constitution placed restrictions thereon. Is it to be asserted that because no such restrictions were placed on gifts, that, therefore, the two-thirds of the voters of a city could impose on all taxable property heavy taxes for years, to make good a mere gift to a private manufacturing corporation? The question answers itself. If such a course could be pursued for one private enterprise it could for all.

It is not necessary to review the many cases cited. A court cannot ignore that the federal and state constitutions—nay that all state constitutions—prohibit the taking of private property even for public

uses without just compensation. Is it to be argued, therefore, that private property can be taken for private uses, either with or without just compensation? The supreme court of the United States stated the elemental thought underlying American constitutional law when it declared that an attempt, through the guise of the taxing power, to take one man's property for the private benefit of another is void, an act of spoliation, and not a lawful use of legislative or municipal functions.

There have been so many well-considered cases in the United States courts and in the state courts on this subject that it would be a work of supererogation to repeat their arguments. It must suffice that the weight of authority and sound reason concur in holding bonds and coupons like those in question void *ab initio*. *Loan Ass'n* v. *Topeka*, 20 Wall. 665; *Com. Bank* v. *City of Iola*, 2 Dill. 353; *Parkersburg* v. *Brown*, 106 U. S. 487; S. C. 1 Sup. Ct. Rep. 442; *Allen* v. *Jay*, 12 (U. S.) Amer. Law Reg. 481, with notes; *State* v. *Curators State Univ.* 57 Mo. 178; *St. Louis Co. Ct.* v. *Griswold*, 58 Mo. 175; *Livingston Co.* v. *Darlington*, 101 U. S. 407.

In Cooley, Const. Lim. the subject is fully discussed, cases reviewed, and conclusions stated. Page 264 *et seq.*

Demurrers overruled.